We'll now move to the next case on the calendar, which is United States v. Bright. Okay, Counselor Reddy. So Mr. Habib, you've reserved two minutes for rebuttal. Yes, thank you. You may proceed. Good morning. May it please the Court, Daniel Habib, Federal Defenders of New York, on behalf of Peter Bright. In this attempted child enticement prosecution, Bright's sexuality took center stage. The jury learned that Bright was in a polyamorous marriage, that he engaged in frequent sexual encounters with men, women, trans men, and trans women, and that he participated in a wide range of sexual kinks, including bondage, domination, sadomasochism... Well, look, his intent was at issue, right? Because he said that he had gone vigilante and was working as a private investigator, and, you know, the government was saying, no, you were there to entice and have sexual, you know, contact with children. So that's going to put intent in issue. That's absolutely right, Your Honor, and I'm not ascribing... So you've got specific issues. The fact that his sexuality was at issue, I don't know what to make of that. So let's get to your issues. Which one do you want to start with? So, Your Honor, to begin with the voir dire claim, the district court in this case erred by declining to pose Bright's brief, focused questions on what jurors thought about people with nonconventional sexual orientations, including whether they believed... It's not really nonconventional sexual orientations, right? I mean, the idea is about engaging in H-play. He didn't identify a sexual orientation, right? So, Your Honor, just although H-play was the principal kink at issue in this case, the trial evidence ranged far wider than that. So is kink practitioner a sexual orientation? Well, I think Mr. Bright testified that his sexual identity was an important part of life, of his life, and his sexual practices were important to him. You cite Ham versus South Carolina, which is about black criminal defendants in the civil rights era, right? Are kink practitioners really comparable to racial minorities during the civil rights era? I think the relevant parallel between the two sets of people is this. Ham was concerned with the defendant's membership in a disfavored minority group and the fact that his trial defense would intensify any prejudices that jurors brought to the case. That's not just a disfavored minority group, right? I mean, Ham is a 14th Amendment case, right? It says that because there's a prohibition on racial discrimination, you need to make sure to root out racial bias. I mean, is there the same constitutional protection for kink practitioners? So as we've sketched out in our reply brief, Fifth Amendment due process and equal protection principles support efforts to combat discrimination against people who belong to sexual minority groups. And that's evident from the Supreme Court's decisions in Romer, in Lawrence, and in Overton. So you do actually think that it's not just a practice, it's a sexual orientation, it's like an immutable characteristic that he engages in this kind of content? What Mr. Brout testified and what was before the jury in this case is that how he functioned as a sexual being in the world was an important part of his life and his identity. Yeah, but for us to determine that he's part of a minority that is disfavored, we have to say that that's right, right? That it is like an immutable characteristic like race, don't we? I don't think this court would have to hold that kink practice is, for example, a protected class for equal protection purposes, or that there was a substantive due process interest in kink sex, as might have been said in Lawrence. All this court has to conclude is that what Mr. Brout did and who he was was a potential source of prejudice in this case. But even if we assume that to be the case, I mean, I looked at the district court's question, and it seems actually to overlap quite a bit with the one that you requested. The real difference is that the one you requested asked open-ended questions, which invited more dialogue. But it seems like Judge Castel's question was designed to see if people had strong feelings about this, and if they did raise their hand, then there would presumably be follow-up. But, I mean, this is not a situation, this is not like a rake-off kind of jury selection where there's, you know, you're over in a half an hour. This was, there was a real question asked here. Why wasn't this sufficient? So I think the question was deficient in several critical ways, Your Honor. First, the question was addressed to sexually graphic evidence, not to people. The district court said... Well, no, no, we're talking about practices and fetishes. And then the district court asked, is there any, the district court said some of the evidence in this case will involve sexually suggestive or sexually explicit statements. Well, the jury's not going to hear anything that isn't evidence, right? That's true. So that's, you're quibbling with that? No, Your Honor. What I'm quibbling with is, and Quibble understates it, but what I'm disputing is that the question addressed, just as a district judge might address a voir dire question to something like grisly crime scene photos or evidence of child abuse, child pornography, the court is in essence asking, would graphic evidence upset or preclude... But it's not saying that, right? It's saying you're going to hear the statements and descriptions of conduct including but not limited to nonconventional sexual practices and fetishes, kink or kinky stuff in age-based role play. And then he says, is there anything about the nature of the evidence as I've described it that would prevent you from being a fair and impartial juror in deciding this case? Now, if somebody harbored a bias against people who engaged in that kind of conduct, wouldn't they raise their hand and say that they can't be an impartial juror? Not necessarily, Your Honor, because, again, it's our view that the question is addressed to sexually graphic evidence. So you're saying the question is only about would you be so upset about the evidence that you wouldn't be able to stay in the room or something as opposed to saying you couldn't be impartial in judging somebody who engaged in this conduct? In just the same way that a district judge might say this case is going to present an autopsy photo, this case is going to present a crime scene photo. Is that going to upset you? But he didn't ask, is it going to upset you? He asked, is there anything about that that would keep you from being fair? And I'm wondering whether that's not a sufficiently open-ended question that it might elicit information that would not come up if the question is, are you a bigot? Asking people, are you a racist, doesn't usually get them to raise their hands. But other kinds of questions about race might well elicit information in which – from which maybe even a challenge for cause could be made or certainly that would enlighten counsel as to whether this is a person that they would like to use a peremptory on. I'm not saying that's necessarily the best approach, but isn't that a reasonable thing that a judge might think that it's better to ask a broader question about does this – anything about this kind of case give you concerns about your ability to be fair? It gives a kind of out for people who don't necessarily want to say, well, I'm biased against certain kinds of people. So I would say two things, Your Honor. First, we did propose just that sort of question. We asked the district court to inquire about the jurors' preconceived notions about people who engage in nonconventional sexual practices. And that request was denied. And I think in this regard, the First Circuit's recent decision in Perez-Rodriguez, which was discussed in the party's 28-J letters, illustrates the point well. It's important to ask a question that doesn't merely assign to the jurors the responsibility of assessing their own impartiality. Rather, it's important to ask a question that elicits the jurors' views, that allows, number one, the defendant to vindicate the right discussed in Dennis and Murphy to show actual bias, and two, to allow the district judge to make an informed assessment of bias on the basis of something more than what the juror professes. But in addition, Your Honor, my second response to your point is this. We had also asked the district court to alert the prospective jurors that this wasn't just a case about sexually explicit evidence, but that it was Mr. Bright himself who engaged in kink and age play. That information wasn't conveyed to the jurors. Well, who else would it be? I mean, what else would the question be referring to? It could have been the conduct of a witness. It could have been conduct that was discussed by another participant in the offense. But actually, I mean, if there's a witness or there's somebody else who's engaging in this conduct and there's going to be a bias against them, that's an appropriate thing to ask about, too. So to the extent that it just encompasses anybody who might engage in the conduct, why would that be an improper question? It didn't exclude Mr. Bright. No, but what I'm suggesting is that the core bias that Mr. Bright was concerned about here was prejudice against him for doing things in his private life that I think it would be blinking reality to deny occasion strong feelings. And in many cases, strong biases. Mr. Bright wanted to know, not only because of that identity, but because of the inextricable intersection between that identity and the specific trial proof, whether the risk of bias was such that particular jurors should have been excused. And that opportunity wasn't provided. At a bare minimum, we've shown that there's a reasonable possibility that insufficient attention was paid to that inquiry to leave this court confident that a bias-free jury was impaneled. I'm happy to address the evidentiary ruling with respect to Dr. Cantor's testimony. Could I ask you, before you do that, your light's on, but I did want to ask about the so-called 404B evidence. It wasn't clear to me that this really was, or at least much of it was 404B. In other words, if a statement is introduced that says the defendant admitted that he had committed crimes like this in the past, that's 404B. Yes. But if the statement is, I've always wanted to commit a crime like this, or I'm interested in committing a crime like this, or in this case, I like children or something like that, that's not really prior bad acts. That's a statement. That's a statement of intent or a statement of preference. It would seem to me that's not really a 404B. It's frankly just, is it relevant? Is it admissible as non-hearsay? And is it, you know, does it meet the requirements of 403? Maybe there's no difference, but is your view that this is 404B? So it was presented by the government under 404B, and it was admitted pursuant to that theory by the district court. Do you think there's any difference between the analysis if it were a 401 slash 403 with a smattering of 801? No, I understand the question. I think for purposes of the specific appellate claim I'm raising, probably not, because my principal claim here is that this material failed the relevance prong because it was not sufficiently similar to the charge conduct to allow the inference that the government was proposing. This material was, in many cases, more than a decade old. It concerned post-pubescent children or post-pubescent teenagers rather than the 7- or 9-year-olds at issue in this case. And in this respect, this Court's decision in Brand is instructive. Brand affirmed on 404B grounds the admission of evidence of possession of child pornography only after several times noting the strong relationship between that contraband and child enticement. So even though the child pornography in that case would be more prejudicial than these tweets or that other material, it's because you're saying there's a closer relationship between the depictions of the child pornography and the conduct that was alleged. Yes, I think Brand several times emphasized the strong empirical link between a possession of child pornography and an abnormal sexual attraction to children. Indeed, the fact that the possession of child pornography was itself illegal was strongly probative. In addition, Brand said in a footnote discussing a Ninth Circuit case, Curtin, that a case involving merely the possession of fictional stories, not themselves unlawful, recounting sexual conduct between adults and children would present a much more difficult question because the link between the two was not so clear. But we also said in that case that the government only needs to show a similarity or some connection. So you're saying, well, they emphasized the close connection, but what we articulated was the government really only needs to show a similarity or some connection. And what I'm suggesting is that multiple factors refute that asserted similarity. One is the distance in time between most of this material and the charged offense. So it's not that there needs to be a very close connection. It's that here you think there isn't even a similarity. I'm suggesting that Brand is instructive on the point of what counts as sufficiency. Mr. Habib, isn't this case a little bit different than what might be a standard or at least a common case? This isn't just a case where he's engaged in chats and the issue is are these chats just fantasies or are they about role play or are they real? Because he's gotten past that, right? He acknowledges that at least by the time that he's meeting the undercover agent, he is aware that what is being proposed is actual children, real sex. His defense now is I was acting as an undercover agent. It seems to me that the kind of evidence that the government is pointing to here is not so much to say this shows that he would like to have sex with six-year-olds as, oh, come on. Here's a guy who is willing to flout various kinds of sexual laws and norms. And now he's telling you not just that he draws a line and he wouldn't do certain things and he only engages in fantasy play, but he's telling you that he shows up when he knows what's being proposed. And the reason is that he so strongly disapproves of this kind of thing that he's trying to entrap this person. It seems to me that the idea that he is a sexual iconoclast in general plays differently in that case than it would in what you're basically setting up the whole thing. The expert witness and the voir dire issues as well as the jury is going to think if he likes to pretend that he'd have sex with children, then he really would. But now we're turning around and saying here's somebody who's engaged in a sort of widespread disdain for societal norms, and yet it's not just that he draws a line that there are some things he won't do, but he's going to go out and try to get somebody arrested. Doesn't that change the whole dynamic of the case and whether this stuff is relevant? There are a number of responses, Your Honor, but let me start with this. When Your Honor first posed the question, you said someone willing to flout social laws and norms about sex, and you then amended the question to say norms. But I think that distinction is quite critical. It's absolutely correct that Mr. Bright deviated from the norm in many respects in his sexual life. That's uncontroversial in this case. However, he not only testified that he had never broken a law, a sexual law, and there's no evidence that he had prior to this case. He testified that for him as a practitioner of an atypical sexual lifestyle, consent was not just an ethical prerequisite for sex to him, but it was the entire point. That was the driving impetus for him. So his argument here is not just that he cares about consent. It's that he was so outraged by the prospect of this mother offering her children for sex that he would not simply cut off contact but actually go into an investigative mode to try to turn her in. And doesn't it seem inconsistent with the kind of person who would be so outraged as to turn to that impulse that he makes jokes about underage sex all the time? I mean maybe it's unfair to say all the time, but who has made a number of jokes about having sex with minors? So I would say this, Your Honor. It's a far cry between what the district court admitted in this case, which were tweets and private chats from 6 to 10 years in the past that were off-color and concerned post-pubescent teenagers and tolerating or condoning the sexual abuse by a mother of a 7-year-old. And I think this comes out most clearly with respect to the 404B evidence. I understand that it's not exactly the same, but there's a similarity there, right? Like wouldn't you think that the kind of person who wants to go out of his way to turn the mother into the police would also be the kind of person who would be offended at the idea of joking about these topics about sexual abuse? No, I don't think so, Your Honor. And if I could turn to the conversations with the sisters, the 14- and 17-year-old sisters that were also admitted as 404B, because I think the point can be made most clearly in this respect. The government adduced that evidence to refute the defense theory that Mr. Bright intended to report Princess Mom to law enforcement. But the relevance theory doesn't hold up, and the chain of inferences is simply too attenuated to pass muster. And let me tell you why. With respect to the 14-year-old, there's no crime to report, right? What we have is somebody engaging in flirty conversation and sending unsolicited, cloaked picture of herself that Mr. Bright tells her not to do and tells her he doesn't want to have any future contact with her. And as to the 17-year-old, a person of legal age, she's telling him that she's engaged in consensual sex work. And so we know, and again, it's a matter of some debate, and this Court doesn't have to weigh in on which side of the debate has it right. But there are many mainstream organizations that think consensual sex work should be decriminalized. And so the idea that somebody who shares that view, who believes that a 17-year-old woman can consent to sex work, that that person would, as a result of that viewpoint, accept or conceal or assist in the concealing of the sexual abuse of a child, is simply too attenuated to get where the government needs to go. All right. Well, you've reserved two minutes of rebuttal, Mr. Habib. So we'll hear from Mr. Lee now. Okay, you may proceed. Good morning. May it please the Court. My name is Alexander Lee, and I'm an assistant United States attorney here in the Southern District of New York. I represent the United States in this appeal, as I did in the trial before the district court. This case boils down to whether the district court fairly exercised its discretion. The trial rulings that Mr. Bright challenges are routine. The district court tweaked his proposed voir dire question. It cabined the scope of his proposed expert's testimony, and it admitted certain evidence under Rule 4.4.B. What's most important is that the district court gave thoughtful consideration to each of these issues, and it acted well within the bounds of its discretion. Its rulings were not arbitrary. They're not irrational. They were done largely after a consultation and argument by counsel, and they should not be disturbed in this case. Let me just start with something that Mr. Habib said. I think he drew an equivalence in this case between the age plague that the defendant claimed he was engaged in and matters of sexual orientation, and I just think that is a false equivalence. The theory of the defense, as I understood it, was that initially Mr. Bright believed he was interacting with someone who was pretending to have other people who were – excuse me. He was engaging with an individual who was role-playing with other individuals who were pretending to be minors, that he did not believe they were in fact minors. That's something that he called age play, and he was worried, as I understood it, that a potential juror might misinterpret that to mean that he himself was interested in real children, and that's what he described as the reason for his voir dire question. The question that the district court posed was tailored to that issue. It described the concept of age play, and it asked if there was something about that concept that would render any potential juror not fair or not impartial, and no jurors came forward. All the district court did was tweak the proposed question that he asked, and nothing about what the court tweaked made this a worse question. Mr. Beebe says that… Was the district court required to ask a question along those lines? I mean you were just – you started out by saying it's an unfair comparison to say that this is like a protected status or that there would be a bias. But then you said, well, the district court basically asked the question anyway, so I guess I just want to separate out those two things. Was the district court required to ask a question about bias against unconventional sexual practices? It was not, Your Honor. So you think it was not, but it did anyway? That's correct, Your Honor. Well, I mean we don't have a case exactly on point, but we do have cases in this circuit that do talk about issues that are likely to provoke strong reactions or prejudices from jurors should be confronted in the voir dire. That's absolutely right, Your Honor. And you're saying that this is not one of those situations? It is not one of those situations because this is not a case where there was any kind of record evidence or any kind of public knowledge really of some sort of widespread bias against age players. This is totally different from matters of race, which are grounded in the 14th Amendment, with which this country has had a long and difficult history, or matters of sexual orientation, which as Mr. Beef himself described, does have. Well, even for those things, I mean I have to tell you the standard instruction or question in a voir dire is just does anybody have any strong views about the race or ethnicity or gender of this defendant or any party that would affect their ability to be fair and impartial? It's sort of a boilerplate question, and that's it, right? That's absolutely right, Your Honor. And that was probably true in this case as well. That's absolutely right, Your Honor. And even in cases where race or sexual orientation has been at issue, the only times when the courts have said it's inadequate was when not a single question was ever asked that even touched on the subject, like in Aldridge or in Ham or in the Eighth Circuit cases regarding sexual orientation that the defense has cited. So in this case, even assuming arguendo that the court should have asked a question on voir dire about this subject, it did. It did, and it asked a question that was tailored and was very similar and was based off of, in fact, the question. Okay, I think I understand that. Can I ask about the tweets and stuff? So if – so he tweets, I think age-based rape laws rather than consent-based are stupid, right? Yes. Now, there are people who believe that we should get rid of statutory rape laws or reduce the age of consent. I mean that's like a public policy debate that goes on. Is that really probative of his intent to engage in sex with a minor? Absolutely, Your Honor. The crux of the defense was, as Your Honor pointed out, that at some point he became a vigilante. He was there to catch a predator. And what this goes to show is that that was not his intent. There may be people who have fair and vigorous debate on this issue. But, for example, I think Mr. Beeb said that there are people who have vigorous debate over whether prostitution should be legal. The people who believe prostitution should be legal do not run around trying to catch prostitutes in sting operations, and that is the point. Well, they're not going around catching prostitutes in sting operations because they think that it should be legal. But the evidence was of somebody who was of legal age and doing it consensually. And so a person who believes that that should be legal might very well think that non-consensual sexual contact with somebody who's five or seven years old is objectionable and needs to be turned in to the authorities, right? Well, but I think the post that he made, I think age-based rape laws rather than consent-based are stupid, goes to the heart of this case because what he is accused of doing, what he was convicted of doing, was violating an age-based sexual offense. A person who thinks that age-based rape laws are stupid do not – does not then… At the time that he says that he realized that they were actual minors and he was horrified, it wasn't obvious that there was consent, right? I think based on the conversation… He could have been offended by the idea that the mother was serving up her children, right? He could have been, but I think the notion that he described, that he thinks that age-based rape laws are stupid, stands certainly in great tension with the notion that he was there to enforce. So it means that somebody – that having made that statement, it's less persuasive that he would have an intent – he would formulate an intent based on revulsion against sex with minors. That's exactly right. Why is this 404B? I mean that specific example, a statement about rape laws. Is that a 404B analysis? Is that a prior bad act? It is a prior act. How is it covered by 404B? Why is it not just a statement that I think – his thoughts on the law or his thoughts on this particular crime? It seems to me that there's an inquiry to be conducted, but it's not clear to me why it's 404B. Your Honor, I do think we could have fairly argued that it should be admitted as direct proof of his intent. I agree with Your Honor, but out of a bunch of caution, we did seek to have this admitted under 404 because Rule 404A does have a general prohibition on prior acts being used essentially as propensity evidence. Ms. Alita, I'm wondering if you're not giving away more than you need to here. If it is 404B evidence, that makes the standard harder for you, right? That's exactly right, and that was the point I was trying to make. So if the district court said it actually qualifies under the standard of 404B, maybe the judge was wrong about that. But if it isn't even subject to that standard, that helps you because maybe this was not an abuse of discretion under the appropriate standard. I'm not sure that it makes a great deal of difference, but I don't know why you're resisting the idea that it's maybe not really – it's not like – you offered it under 404B, and so you've got to prove that it's a prior bad act. You've got to persuade us that 404B applies. You're better off if it doesn't. That's absolutely right, Your Honor, but my point is that 404B is a Carter test, and we did meet that test in this case. It isn't – I mean the – one can fairly argue what weight this should get, but presumably those arguments were made to the jury. They were actually made to the jury. This doesn't seem like evidence that would make me say, wow, that turns this case all around, but it's up to the jury. If there is any reasonable basis for saying this is relevant and the prejudice from it is another issue, I suppose. But if it passes that standard, the fact that it's not terribly compelling, at some level that becomes a matter of the weight of the evidence. I fully agree with that, Your Honor, and the parties did argue in summation the weight that this evidence should be given. Certainly the defense argued that Mr. Breit was simply joking or that because of the age of the post that they shouldn't be given much credit. So can I ask about the other posts? So there's the consent law we were just talking about, and then there's also the tweets that are the jokes about the jailbait. I guess the opposing counsel pointed out that that's about post-pubescent – I mean it's still minors, but it's post-pubescent. I mean so you argue that it shows an abnormal sexual attraction to children, right? That's right. So I mean it might be in bad taste, but people making jokes about jailbait, aren't they talking about people who are conventionally sexually attractive but who are minors? I mean how does that – how does making jokes about being attracted to somebody who's 16 or 17 or whatever indicate an abnormal sexual attraction to children? Well, I think while the word jailbait itself may convey a range of ages, certainly all below the age of consent – that's the whole idea of jailbait. Mr. Breit was much more specific in the actual chats that he gave, and I realize this is a somewhat different category. No, I understand. The chats might be more specific, but you also admitted these Twitter statements, admiring the jailbait on the train, astonishing amount of jailbait on this flight. I mean that just kind of seems – again, I mean it might be in bad taste, but it doesn't seem to be focused on wanting to have sex with children, like people who are five or seven years old. Well, he's referring in one of the tweets to a school orchestra or something similar, and I recognize that there may be a range of ages available here, but certainly part of that range would include pubescent children, prepubescent children, anything that is – anyone who is school-aged. And I do think that that is pertinent, especially given the context of his chats, which were around the same time, in which he was specifically talking about 13-year-old girls. Is the evidence specific as to what kind of school it was? It is not, Your Honor. Could it have been a college? Could it have been a high school? Why do you say that because it is a school band, that shows that he was talking about people who could have included prepubescent children? Well, because he used the term jailbait. Yeah, but that means anybody who's under the age of – the legal age of consent. That's right, Your Honor. And so I think if it were, for instance, a college band, as Your Honor said, that would be unlikely to be someone that he referred to as jailbait. So if we knew for sure that it was 16- and 17-year-olds, then you would say it's not probative? I think it would be a closer call. So if it were 16- and 17-year-olds, why would it be even relevant? Well, I do think it could potentially be relevant because in the case of Brand, the court refers to child pornography in general, which would include children under the age of 18. That would include 16-year-old girls, 17-year-old girls. But that, I think, is not really the case that we have in front of us. This is not a case involving 17-year-old girls or adult-looking young children. What we're talking about here are 13- and 15-year-old girls as sort of explained in the other context. Well, the chats are. The chats are. Although even there, I mean, it seems like it's obvious that he's joking about it. I don't think it is obvious, Your Honor. It says right there the 13-year-old is too old, LOL. I mean, doesn't that indicate that it's a joke? Well, I don't think so, Your Honor. I think he's saying that – Putting LOL next to a statement does not indicate that it's a joke? I think one can say something and then follow it up with a statement. So, sorry. So the government's position is that when he says that this 13-year-old pop singer is too old, LOL, he actually was not joking, was like saying I don't have sex with people who are above 13? I don't think he can – he's necessarily saying I only have sex with people who are 13. I do think he is saying I am attracted to this young woman. I'm not saying I'm – And people younger than this woman. Absolutely. If too old is – I mean it could be interpreted to mean that my attractions lie, if anything, younger than that. That's absolutely right, and I really think one of these chats is really quite probative. Apparently some father posts a picture of his daughter on Facebook, and the defendant says, in effect, oh, this person posted a picture of his daughter. She looks like she's 13 or something. It was all I could do not to post. I'd hit that. We're not talking about pop stars in that context. We're not talking about fantasies. We're not talking about role play. We're talking about a father who posted a picture of his actual child on Facebook. Right, but he sent that in a private message to a friend, and then the friend responds, ha, ha, ha, ha, LOL. So in that context, doesn't it also seem like a joke? I think perhaps the person who was corresponding with hoped he was joking and was saying I hope you're joking in effect by saying LOL or ha, ha, ha. But I don't think it means that he was joking. I think he meant I really would like to have sex with this 13-year-old girl, and if not for societal norms, that's exactly what I would say. Was there any evidence that he had engaged in sex with minors before – I guess ever since this one didn't lead to actual sex with minors. So was there any evidence that he had engaged in sex with minors? There was no evidence that he actually engaged in sex with minors. All right. Thank you, Mr. Lee. We'll now hear from Mr. Habib for two minutes of rebuttal. Thank you. Let me address the 404B matter, and let me tell the Court why it matters. On page 71 of our opening brief, we collect statements from the government's summation in which it tells the jury there are six reasons to convict Mr. Bright. Three of them are the 404B evidence, and in fact the government says, and this is at 5A830, that each of those six reasons standing alone is sufficient to prove Mr. Bright's culpable intent, which was the only disputed issue in this case. So the inquiry matters. Judge Menache, I think you've hit the nail on the head. All of these tweets are either obvious jokes or not probative of the relevant question. And if I could just hit a few of them to tell you why. The rape law tweet, which was reason number three in the government's summation, what Mr. Bright is saying is that, in fact, laws concerning sexual activities with minors that are based on age are insufficiently protected, and that what really matters is consent, because somebody couldn't be legally above the age of consent but incapable of having the emotional and sexual maturity to participate in a sex act. And in fact, on cross-examination, Mr. Bright testified that, in his view, it was unlikely that somebody 14 or younger would have the emotional and sexual maturity to consent. So the idea that he thinks that consent, which is an individual-specific inquiry, rather than age, which is a categorical classification, is the touchstone, is not probative of the proposition that the government is putting forth, which is that he wants to have sex with a seven-year-old. In addition, the other one I'd like to hit, the 2011 tweet about the 13-year-old pop singer who is too old, LOL, this conversation is occurring with a person who goes on to marry Mr. Bright. This is someone who becomes his wife. So it's extremely obvious, not only from LOL, but from the context of the party's relationship, that he's not literally saying, I won't have sex with anybody older than 13. And so those are two examples. The rest are of a piece. This is a case so close that the first jury deadlocked. Mr. Bright, at the time of this offense conduct, was a 38-year-old married man with no partner. Can I just ask you, since you've gone through these individual examples, does it make a difference that we have a collection of them? Does the context change when you have a whole bunch of jokes about sex with minors? I would say two things, Your Honor. One, it exacerbates the prejudice to Mr. Bright because there was more of it, there was more that the government could improperly draw on in its summation. But let me again frame where these are coming from. These are coming from an investigator at the United States Attorney's Office who reviewed all 200,000 of Mr. Bright's public Twitter posts over the previous decade and came up with these three. They come from a search of every aspect of Mr. Bright's digital life to which Mr. Bright consented, which would be his phone, his computers, his web searches, his e-mails, his Google searches, and this is what they got. Six disconnected pieces of ephemera, none of them sufficiently probative to warrant admission under either a 404 or a 401 theory, yet nonetheless all relied on as, again, each individually sufficient basis for conviction. That's the argument that the government made to the jury. All right. Thank you, Mr. Habib. Thank you both. We will reserve decision.